IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

SHELENA G. BROWN, )
 )
 Plaintiff, )
 )
 ) CIV-10-861-F
v. )
 )
MICHAEL J. ASTRUE, )
 Commissioner of Social Security )
 Administration, )
 )
 Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed her application for benefits on November 27, 2007. (TR 98-

100, 127). Plaintiff, who was 38 years old at that time, alleged that she became disabled on November 1, 2006, due to a "[s]lipped disc" in her back with resulting back pain, poor memory, high blood pressure, and knee pain. (TR 98, 132). Plaintiff described a high school education and previous work as a fast food worker, hospital maintenance worker, and janitor. (TR 133-139). The application was administratively denied on initial review and reconsideration. (TR ). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Thompson ("ALJ") on June 11, 2009. (TR 24-53).

At the hearing, Plaintiff amended her alleged disability onset date to November 27, 2007. (TR 25). During the hearing, Plaintiff testified (TR 29-46) that she was 39 years old, had previously worked as a concession stand attendant for two years in 2006 and 2007, as a fast food worker for a "couple of months" in 2000 and earlier for 1 ½ years in 1997 and 1998, as a hospital maintenance worker for two years, and as a daycare assistant for a "month or two" in 1994. Plaintiff testified that she was unable to work because of continuous lower back pain that radiated into her left shoulder and down her left leg, left shoulder muscle spasms, and right knee pain that lasted 30 to 40 minutes depending on the activity. Plaintiff stated that she spent most of her days lying down or reclining and that she took over-the-counter pain medication which relieved her pain for only 20 to 30 minutes. She stated she could drive short distances, that her 17-year-old daughter performed all house cleaning chores, and that she could take care of her personal needs without assistance. Plaintiff estimated she could sit for 30 to 40 minutes at a time, stand for 40 minutes to one hour at a time, walk about a block, and lift up to ten pounds. She testified she elevated her

left knee "mostly all day" because of pain and swelling. A vocational expert ("VE") also testified at the hearing. (TR 46-52).

The ALJ subsequently issued a decision (TR 13-20) in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council declined Plaintiff's request to review this decision (TR 1-3). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Judicial review of a decision by the Commissioner in a social security case is limited to a determination of whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). In reviewing the decision of the Commissioner, the court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). The "determination of whether the ALJ's ruling [which becomes the Commissioner's decision] is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other

evidence in the record." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009)(citations, internal quotation marks, and brackets omitted).

III. ALJ's Decision

Following the well-established sequential evaluation procedure adopted by the agency, see 20 C.F.R. § 416.920(b) - (f)(2010); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail), the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since November 27, 2007, her amended alleged onset date of disability. (TR 15). At step two, the ALJ found that Plaintiff had a severe impairment due to degenerative disc disease of the lumbar spine with myofascial back pain.[1] (TR15-16). At step three, the ALJ found that this severe impairment was not *per se* disabling. (TR 16). At the fourth step, the ALJ found that despite her severe back impairment Plaintiff was capable of performing sedentary work with certain restrictions, including no climbing of ladders, ropes, or scaffolds, no more than occasional climbing of ramps or stairs, no more than occasional stooping or crouching, no more than frequent balancing, kneeling, or crawling, and avoiding all exposure to hazards such as unprotected heights and dangerous moving machinery. (TR 16-18). Having found that this residual functional capacity ("RFC") for work precluded the performance of Plaintiff's previous jobs, the ALJ reached the fifth and final step of the evaluation procedure. At the fifth step, the ALJ found that considering

---

[1]"Myofascial pain syndrome is defined as irritation of the muscles and fasciae (membranes) of the back and neck causing chronic pain (without evidence of nerve or muscle disease)." Wilson v. Astrue, 602 F.3d 1136, 1142 n. 4 (10th Cir. 2010)(internal quotation marks and citations omitted).

Plaintiff's RFC for work and her vocational characteristics Plaintiff was capable of performing jobs available in the economy and she was therefore not disabled. (TR 19). In making this finding, the ALJ relied on the VE's testimony concerning jobs that would be available in the economy for an individual with this RFC and vocational history, including the jobs of polisher, bench hand, and film touch-up inspector. (TR 19).

IV. Consideration of Obesity

Plaintiff contends that the ALJ failed to adequately consider her obesity and its effects in determining her RFC for work. Social Security Ruling ("SSR") 02-1p requires an ALJ to consider the effects of obesity when assessing a claimant's RFC and advises that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p, "Titles II & XVI: Evaluation of Obesity," 2000 WL 628049, * 1 (Sept. 12, 2002). An ALJ may "not make assumptions about the severity of functional effects of obesity combined with other impairments," but must "evaluate each case based on the information in the case record." Id. at * 6.

The record reflects that Plaintiff worked until November 2007. (TR 25). Prior to that date, Plaintiff infrequently sought treatment for back pain and other symptoms, including chest pain, dizziness, left ankle pain, bronchitis, depression due to family problems, and hypertension. In January 2007, Plaintiff sought treatment for back pain that had begun three months earlier "while lifting." (TR 182). A consultative orthopedic examiner, Dr. Kaul, noted that MRI testing showed Plaintiff had degenerative disc disease at two levels with left-

sided neural foraminal stenosis[2] but no compression. (TR 183-183). In a physical examination, Dr. Kaul noted that Plaintiff's strength and sensation was intact, and she did not exhibit pain in her paraspinal back muscles. She was prescribed pain and sleeping aid medications and advised to undergo four to six weeks of physical therapy for lower extremity strengthening, rehabilitation, and aerobic conditioning. There is no record that Plaintiff underwent physical therapy, and she continued to work for several months after this evaluation.

In July 2007, Plaintiff sought emergency room treatment for back pain that began three days earlier after she performed heavy lifting at her job. (TR 305-315). The examining physician, Dr. Fitzgerald, noted that a physical examination of Plaintiff was normal and she was treated for acute lumbar strain with steroid anti-inflammatory medication and a small amount of narcotic pain medication. (TR 305-315). In July 2007, Plaintiff sought treatment at her local medical clinic for back pain and hypertension. (TR 320). She was prescribed anti-inflammatory medication and muscle relaxant medication to be taken as needed. (TR 320). The examining physician noted Plaintiff was advised not to lift over ten pounds and not to perform "grill work" or prolonged standing at her job. (TR 320).

The only record of medical treatment of Plaintiff after July 2007 is a record of hospital

---

[2]Stenosis is "a narrowing of one or more areas in [the] spine . . . [that] can cause pain or numbness in [the individual's] legs, back, neck, shoulders or arms; [and] limb weakness . . . . Spinal stenosis is commonly caused by age-related changes in the spine." Mayo Clinic Staff, Definition of "spinal stenosis," Mar. 11, 2010, http://www.mayoclinic.com/health/spinal-stenosis/DS00515 (accessed July 18, 2011).

emergency room treatment in March 2009 for bronchitis and chronic low back pain. (TR 362-379). The examining physician, Dr. Bickell, noted that a physical examination of Plaintiff was essentially normal. (TR 364). The physician noted a chest x-ray was normal, an EKG was normal, and other laboratory testing was normal. (TR 364). According to the doctor's report, Plaintiff described her low back pain as being exacerbated with her cough but otherwise nonradiating. (TR 364). Dr. Bickell prescribed medications, including a "small amount" of narcotic pain medication, and advised Plaintiff "to be off work for two days." (TR 364).

The medical record shows that Plaintiff is 5'7" tall and she weighed 252 pounds in January 2007 and 254 pounds in February 2007. (TR182, 357). Plaintiff testified at her hearing in June 2009 that she weighed 235 pounds. (TR 41). Although one of Plaintiff's treating physicians, Dr. Adams, described her in February 2007 as being "considerably overweight," no physician indicated that Plaintiff was obese or that Plaintiff's weight had resulted in specific impairments.

Plaintiff testified that she was unable to work due to pain in her lower back, right knee, left shoulder, and left leg. (TR 37-38). She testified that in order to relieve her pain she took over-the-counter pain medication and "tr[ied] to relax." (TR 43). She testified that she had difficulty staying asleep due to back pain. (TR 45). She testified that during the day she read and watched television, that she occasionally performed activities like cooking, and that she was able to take care of all of her personal needs, including dressing herself, without assistance. (TR45-46).

Plaintiff did not identify obesity as a limiting or disabling impairment. Because neither Plaintiff nor her representative raised an issue of obesity at the hearing or in her application as an impairment and the record did not contain any medical evidence to suggest obesity was a severe impairment, the ALJ did not err in failing to specifically consider any impact obesity had on Plaintiff's ability to work. See Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997)("Ordinarily, the claimant must in some fashion raise the issue sought to be developed . . . . [T]he claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists.").

V. RFC and Credibility

Plaintiff contends that there is not substantial evidence in the record to support the RFC finding made by the ALJ. Plaintiff further contends that in connection with the RFC finding the ALJ erred in evaluating her credibility.

At step four, the claimant bears the burden of proving her inability to perform the duties of her past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993). If the claimant is unable to perform his or her past work, the ALJ must determine at step five whether there are other jobs in the economy which the claimant can perform in light of his or her RFC for work. RFC is defined by the regulations as what the claimant can still do

8

despite his or her limitations. See 20 C.F.R. § 416.945(a). RFC categories include sedentary, light, medium, heavy, and very heavy, based on the exertional demands of the various jobs available in the national economy. See 20 C.F.R. § 416.967. The assessment of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

Plaintiff first alleges that the ALJ failed to incorporate all of her limitations in the RFC finding. However, Plaintiff points only to her subjective statements during the hearing as evidence of her limitations. The ALJ is not required to adopt the testimony of a VE concerning limitations that are not supported by the medical evidence. See Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995)(hypothetical posed to VE "must include all (and only) those impairments borne out by the evidentiary record"). For instance, Plaintiff testified that she lies down or reclines most of the day. (TR 41). When the ALJ included this subjective statement, along with other subjective statements made by Plaintiff at her hearing concerning her functional limitations and daily activities, in a hypothetical question posed to the VE, the VE responded that no jobs would be available for an individual with these symptoms and limitations. (TR 50-51).

9

The medical record reflects that physical examinations of Plaintiff in January 2007, July 2007, and March 2009 were essentially normal. (TR 183, 307, 361, 364). Since she stopped working in November 2007, Plaintiff only sought treatment once for a bronchial infection and chronic low back pain. (TR 362-379). She informed the examining physician that her low back pain did not radiate, and she was prescribed a small amount of narcotic pain medication and advised not to work for two days. (TR 364). In March 2007, when Plaintiff sought treatment for hypertension and back pain, the examining physician noted that Plaintiff was prescribed medications and advised not to lift over ten pounds or perform "prolonged standing" work-related activities. (TR 320). She continued to work for several months after this examination at her job as a concession stand assistant. The ALJ's RFC finding is consistent with this examining physician's work-related limitations. Two non-examining medical consultants who reviewed the sparse medical record made RFC assessments in 2008 that are consistent with the ALJ's RFC finding. (TR 346-353, 355).

Plaintiff contends that the ALJ erred in evaluating her credibility. The ALJ must "make a finding about the credibility of the [claimant's] statements about [her] symptom(s) and [their] functional effects." Social Security Ruling 96-7p, 1996 WL 374186, at * 1 (July 2, 1996). In making this credibility determination, the ALJ may consider various factors, including "the levels of [her] medication and [its] effectiveness, . . . the frequency of [her] medical contacts, the nature of [her] daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391

(10th Cir. 1995). See 20 C.F.R. § 416.929(c)(3)(listing factors); Social Security Ruling 96-7p, 1996 WL 374186, at * 3 (same).

The ALJ found that Plaintiff's subjective allegations of disabling pain and limitations were not entirely credible because they were not consistent with the medical evidence. (TR 18). The ALJ specifically reasoned that no physician had advised Plaintiff to seek disability benefits or opined that her impairments were disabling. (TR 18). See Wall v. Astrue, 561 F.3d 1048, 1068 (10th Cir. 2009)(noting ALJ's consideration of pain disorder was sufficient, particularly in light of the record which did not contain any opinions from treating or examining physicians indicating claimant was totally disabled). The record supports this rationale. The ALJ also reasoned that, despite Plaintiff's subjective testimony that she suffered left leg muscle spasms and pain radiating into her left shoulder, there was no medical evidence in the record showing that Plaintiff sought treatment for or was observed by a medical professional as having left leg muscle spasms or radiating pain into her left shoulder. (TR 18). The medical record supports this rationale. The ALJ further reasoned that Plaintiff did not appear to be particularly uncomfortable at the hearing and her movements were slow but were not "persuasive for someone claiming disability." (TR 18). The ALJ may properly base a credibility determination on factors that include the ALJ's actual observations of the claimant. See Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 2000); Kepler, 68 F.3d at 391. See also Social Security Ruling 96-7p, 1996 WL 374186, at * 8 (ALJ may not accept or reject individual's complaints solely based on personal observations, but ALJ "should consider any personal observations in the overall evaluation

11

of the credibility of the individual's statements"). Although Plaintiff contends that the ALJ should have provided a more detailed analysis of the credibility issue, in this case the record did not conflict with the ALJ's RFC or credibility findings, and thus the need for a more detailed analysis was unnecessary. See Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004)("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."). There is substantial evidence in the record to support the ALJ's RFC finding and credibility determination, and no error occurred with respect to the ALJ's evaluation of the evidence.

The ALJ found that Plaintiff could perform other work available in the economy. This conclusion is supported by substantial evidence in the record, and the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before      August 11th , 2011, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's

recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this  22nd  day of  July , 2011.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE